## Miracle v. Hopkins et al.

(Decided Oct. 15, 1935.)

E. N. INGRAM and HIRAM H. OWENS for appellant.

W. T. DAVIS for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—
Affirming.

On September 25, 1929, A. B. Miracle obtained a joint judgment against W. C. Hopkins and Bill Green for the sum of $730.90. On January 3, 1934, execution issued on the judgment. On January 4, 1934, the execution was returned "No property found."

Thereafter Miracle brought this action under section 439, Civil Code of Practice, to enforce satisfaction of the judgment, and Bill Green and Bell county were made parties defendant.

At the time the action was brought Bill Green was keeper of the poor farm of Bell county. Bell county filed an answer denying any indebtedness to Green. In paragraph 2 of his answer Green interposed the following defense: Under his contract with the county it was his duty to furnish food, clothing, medicine, and other things necessary for the proper care and support of the disabled, infirm, and destitute citizens and residents of the county ordinarily known as paupers, at the Bell County Infirmary. During all the times mentioned he had in his custody at said infirmary as many as 32 persons, and was paid at the rate of 60 cents a day for each of said persons received, supported, and cared for by him, which sums were due and payable at the end of each month. He had no money, property, or income except the 60 cents per day with which to buy food, clothing, medicine, etc., and it was necessary for him to purchase said food, clothing, medicine, etc., on a credit to be paid for out of funds to be paid him by Bell county. Unless he was permitted to use said funds to maintain his credit it would be impossible for him to care for and support the destitute, disabled, and infirm persons under his contract and agreement with the

county. For these reasons the sums due or to become due were not subject to attachment, garnishment, or claim of Miracle. The court overruled a demurrer to the foregoing paragraph of Green's answer, and Miracle having declined to plead further, his petition was dismissed. He appeals.

Though the rule is different as to officers and employees of cities, it has always been the rule in Kentucky that public policy will not permit a creditor to attach or subject fees and allowances due by the commonwealth or a county to its officers, employees, and contractors. Thus, in the early case of Divine v. Harvie, 7 T. B. Mon. 439, 18 Am. Dec. 194, the Legislature allowed Roger Divine $252.50 for cutting and piling wood, and John Harvie, a creditor, sought to subject Divine's claim against the state to the satisfaction of his judgment. He made the auditor and treasurer of the state parties, and prayed that the auditor might be directed to draw a warrant in his favor and the treasurer to pay it in satisfaction of so much of the judgment. In denying the relief prayed, the court said:

> "Government, as a sovereign may contract with whom she will, and the credit, which she gives by her obligation, may be, and frequently is, the only credit, which her contractor possesses. If that credit can be directed to other debts, instead of the supplies of the government against the will of her contractors, injury to government, and disgrace to the officer, may be the consequence."

Several years later there arose in the case of Webb v. McCauley, 4 Bush, 8, the question whether allowances made by county courts to jailers for fees and services could be attached in the hands of the sheriff. In answering the question in the negative, the court called attention to the case of Divine v. Harvie, supra, and held that if compensation due the jailer by the state could not be attached, then for the same reason the compensation due by the county could not be attached under section 474 (now section 439) Civil Code of Practice. In reaching this conclusion, the court, after referring to the fact that jailers were county officers with certain duties to perform, and were entitled to certain allowances to enable them to perform their duties, added:

> "Those who have not the means on hand or cannot otherwise procure the necessary supplies get

them, as is shown in this case, on the faith that they will pay for them on the payment of their fees and charges against the county and State, or both, or by advancements by some friend in consideration of an assignment of the fees of the office in anticipation; and if they can be reached in the hands of the county treasurer or agent, and applied to the payment of debts arising out of totally different transactions, it must result disastrously to the public interests; and hereafter, in the selection of jailers, the extent of their fortunes would become a consideration of more importance than superior qualifications and moral fitness. Public policy, therefore, stands opposed to the construction of the section, supra, contended for.''

The foregoing doctrine was adhered to in Heilbronner v. Posey, 103 Ky. 462, 45 S. W. 505, 20 Ky. Law Rep. 156, where the salary of the county superintendent of schools was involved, and also in Dickinson v. Johnson, 110 Ky. 236, 61 S. W. 267, 22 Ky. Law Rep. 1686, 54 L. R. A. 566, 96 Am. St. Rep. 434, where the salary of the clerk of the Jefferson county court was involved.

It is true that a poorhouse keeper appointed by order of the fiscal court is an employee or agent of the court and not a public officer, Graves County v. Dowdy, 258 Ky. 544, 80 S. W. (2d) 597, but the reasons for the rule given in Divine v. Harvie, and Webb v. McCauley, supra, and approved in later cases, apply with equal force to an employee or agent of the fiscal court. Green was allowed 60 cents a day for taking care of each inmate, and the inmates numbered 32. If this allowance could be subjected to his debts, it would operate disastrously to the public interest. We therefore conclude that the allowances due by Green were not subject to attachment and the court did not err in so holding.

Judgment affirmed.